IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                           CRIMINAL ACTION NO. 2:16-cr-00116

MIGUEL QUINONES,

                Defendant.

MEMORANDUM OPINION AND ORDER

       Pending before the court is the defendant's Motion to Recuse [ECF No. 34]. The defendant asks that I recuse myself from this case pursuant to either 28 U.S.C. § 455(b)(5)(ii) or § 455(a) because of my son's past tenure as United States Attorney for the Southern District of West Virginia. For the reasons discussed below, this Motion is **DENIED**.

## I.    Factual Background

      The following facts are relevant to the instant Motion. R. Booth Goodwin II ("Goodwin"), my son, served as United States Attorney ("U.S. Attorney") for the Southern District of West Virginia from June 25, 2010, until December 31, 2015. Mr. Miguel Quinones is a criminal defendant whose case was assigned to me on June 21, 2016. A criminal complaint initiating this litigation was filed by a representative of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") against the defendant on June

14, 2016, approximately five and a half months after Goodwin left his position as U.S. Attorney. Resp. 5, 7 [ECF No. 37]; Crim. Compl. [ECF No. 3]. The current U.S. Attorney's name, Carol Casto, appears on the June 21, 2016 Indictment [ECF No. 16]. The Indictment charges Mr. Quinones with being a felon in possession of a firearm on two separate dates in 2013. *Id.* According to the facts provided by the parties, the U.S. Attorney's Office was contacted sometime shortly after December 3, 2013 regarding Mr. Quinones, at which point Assistant United States Attorney ("AUSA") Jennifer Herrald referred the matter to ATF for investigation. Resp. 4; Mem. Supp. Mot. Recuse 2 [ECF No. 35]. The United States asserts that between this referral in December 2013 and the June 14, 2016 filing of the criminal complaint, "there was no contact with the federal court system in connection to the matter." Resp. 4. The defendant asserts that in the months following AUSA Herrald's referral of the matter to ATF, "the government continued its investigation in tandem with a lengthy state investigation." Mem. Supp. Mot. Recuse 2. The defendant does not specify whether the "government" investigation refers to ATF or the U.S. Attorney's Office. Neither party alleges any personal involvement or knowledge on the part of Goodwin.

The defendant argues that because my son was serving as the U.S. Attorney when his office "began, and continued, to investigate Mr. Quinones for the federal firearms violations with which he is currently charged," I must recuse myself pursuant to 28 U.S.C. § 455(b)(5)(ii). Mem. Supp. Mot. Recuse 3. Additionally, in a

2

single sentence, the defendant asserts that recusal pursuant to § 455(a) is also appropriate because a "reasonable observer, knowing that Mr. Goodwin was involved in this case prior to his departure from the United States Attorney's office and that he is the son of Judge Goodwin, could reasonably question Judge Goodwin's impartiality." *Id.* at 4. The United States timely responded in opposition, arguing that recusal is not appropriate under either subsection of § 455.

## II.   Legal Standard

Recusal of federal district court judges is governed by 28 U.S.C. § 455.[1] Subsection 455(a) states the general rule that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Subsection 455(b) enumerates several specific circumstances in which a judge must disqualify himself. Relevant here is § 455(b)(5)(ii), which states in pertinent part that a judge "shall" disqualify himself if a "person within the third degree of relationship" to him "[i]s acting as a lawyer in the proceeding."[2]  These provisions are to be read together and "divide the universe of disqualification into two halves: the general, catch-all

---

[1]  28 U.S.C. § 144 is also related to recusal but is not implicated in this matter. A federal judge may also be subject to disqualification on constitutional grounds, for violation of due process. Section 455 however, is considered to establish a more demanding standard for recusal than the constitutional requirement. Leslie W. Abramson, *Specifying Grounds for Judicial Disqualification in Federal Courts*, 72 Neb. L. Rev. 1046, 1046 n.1 (1993).

[2]  Subsection 455(b) also requires recusal based on family relationship in other circumstances, including when the relative is party to the proceeding, is known to have an interest that could be substantially affected by the outcome of the proceeding, or is likely to be a material witness in the proceeding. *See* 28 U.S.C. § 455(b)(5)(i), (iii), and (iv). Financial interests of a spouse or minor child residing in the judge's household that could be affected by the outcome of the proceeding also mandate disqualification under § 455(b)(4). These subsections have not been raised by the parties as a basis for disqualification, nor is it asserted that my son has any financial or other substantial interest in the outcome of any proceeding before me.

3

category of § 455(a) . . . and a list of more specific grounds for disqualification in § (b)." Charles Gardner Geyh, Fed. Judicial Ctr., Judicial Disqualification: An Analysis of Federal Law 10–11 (2d. ed. 2010), http://www.fjc.gov/public/pdf.nsf/lookup/ judicialdq.pdf/$file/judicialdq.pdf; *see also id.* at 29 ("When relatives . . . appear as counsel, the issue is ordinarily resolved by § 455(b)(5). However § 455(a) is sometimes used to fill gaps.").

The circumstances warrant a brief detour into the history and rationale behind judicial disqualification based on family relationships. Under English common law, judicial disqualification was limited to the judge's direct financial interest in a case. *See* Raymond J. McKoski, *Disqualifying Judges When Their Impartiality Might Reasonably Be Questioned: Moving Beyond a Failed Standard*, 56 Ariz. L. Rev. 411, 418 (2014) (explaining that "[t]he presumption of impartiality protected judges from all other claims of interest or bias"); *see also* Richard E. Flamm, *The History of Judicial Disqualification in America*, Judges' J., Summ. 2013, at 12, 13 ("A judge could be disqualified for direct financial interest in the cause before him, and for absolutely nothing else.").

In 1792, Congress codified and expanded the common law with legislation that became the precursor to 28 U.S.C. § 455, providing for disqualification of a judge who was "concerned in interest" as well as a judge who had been "of counsel for either party." Geyh, Judicial Disqualification, *supra*, at 5. In 1821, for the first time, the

statute added disqualification based on family relationships, requiring "disqualification when relatives of the judge appeared as parties." *Id.*

More than a century later, relationship to a party's *attorney*, rather than the party itself, was added as grounds for judicial disqualification. In 1948, § 455 was modified to require disqualification of a judge "so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on trial, appeal, or other proceeding therein." *Id.* at 6.[3]

In 1974, the statute was rewritten to conform with the ABA's Code of Judicial Conduct, which was approved by the ABA in 1972 and adopted by the Judicial Conference of the United States in 1973, making it applicable to federal judges. H.R. Rep. 93-1453, at 6352 (1974). With only a few exceptions, the 1974 amendments to § 455 were intended to align the statutory and ethical standards governing disqualification of federal judges. *Id.* at 6353 ("The bill would make both the statutory and the ethical standard virtually identical.").[4] Most notably, the 1974 revisions

---

[3] In 1924, the ABA evidently considered but ultimately rejected a "strict" prohibition on relatives appearing as counsel before judges. Andrew J. Lievense and Avern Cohn, *The Federal Judiciary and the ABA Model Code: The Parting of the Ways*, 28 Just. Sys. J. 271, 273 (2007). Even so, the Judicial Conference, which often used the ABA canons as an informal guide, later adopted a policy in 1942 that "federal judges should avoid sitting in cases in which their near relatives are of counsel, as contrary to the spirit of Canon XIII of the Canons of Ethics of the American Bar Association." *Id.* at 274; *see also* The Judicial Conference of Senior Circuit Judges, 28 A.B.A. J. 817, 820 (1942). Canon XIII was the canon on "Kinship or Influence," which read that a judge should not act in a controversy "where a near relative is a party; he should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position or influence of any party or other person." Canon XIII, American Bar Association, *1924 Canons of Judicial Ethics*, available at http://www.americanbar.org/groups/professional_responsibility /resources/judicial_ethics_regulation/mcjc.html.

[4] Accordingly, interpretation and commentary of the judicial ethical canons may be relevant, though not dispositive, in interpreting § 455.

codified the stance that the appearance of impartiality was just as important as actual impartiality. *See generally* Raymond J. McKoski, *Disqualifying Judges*, supra, at 413–14 (describing the new rule announced by the ABA in 1972 as "an unprecedented expansion of the grounds for judicial recusal" in protecting against the *appearance* of partiality rather than just actual partiality). The purpose of the enactment was to "clarify" the grounds for disqualification and "promote public confidence in the impartiality of the judicial process." *See In re Drexel Brunham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (quoting H.R. Rep. 93-1453, at 6355 (1974)), *cert. denied*, 490 U.S. 1102 (1989).

Generally speaking, the goal of disqualification is to ensure a "fair trial in a fair tribunal," a basic tenet of due process. *In re Murchison*, 349 U.S. 133, 136 (1955). "To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." *Id.* Modern disqualification statutes have supplemented this rationale with the goal of promoting public confidence in the judiciary. *See* McKoski, *Disqualifying Judges*, *supra*, at 418 (noting the shift in 1972 "when the ABA decided that promoting public confidence in judicial impartiality, rather than protecting a litigant's right to a fair judge, supplied the primary rationale for disqualifying judges"); *see also* Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 Harv. L. Rev. 736, 746–47 (1973) (noting a second, "public relations," concern rooted in the "peculiar nature of the judicial process" because the courts' authority lies in public acceptability of judicial decisionmaking).

6

More specifically, the prohibition on family members appearing as counsel before the judge seems to have stemmed from an interest in avoiding the impression that any person might "improperly influence" the judge or "unduly enjoy his favor." Canon XIII, American Bar Association, *1924 Canons of Judicial Ethics*; *see also* The Judicial Conference of Senior Circuit Judges, 28 A.B.A. J. 817, 820 (1942) (noting that allowing judges to preside over a case in which a near relative is "of counsel" goes against the "spirit" of Canon XIII, even though Canon XIII counseled disqualification only when the relative was a party). Family relationships between the judge and counsel implicate concerns of "direct influence or favoritism flowing from the bench to a related attorney" or a "suspicion that the lawyer-relative is benefiting from a case in the judge's court." Leslie W. Abramson, *The Judge's Relative is Affiliated with Counsel of Record: The Ethical Dilemma*, 32 Hofstra L. Rev. 1181, 1181 (2004).

I have identified three potential sources of bias or perceived partiality against which § 455 might seek to guard in considering a judge's relative participating as an attorney. First, in keeping with the original roots of disqualification at common law, the risk of bias may relate to the relative attorney's financial interest in the outcome of a case. Relatedly, some courts also consider substantial nonpecuniary interests such as a relative attorney's reputation or goodwill. *See, e.g.*, *SCA Servs., Inc., v. Morgan*, 557 F.2d 110, 115 (7th Cir. 1977) (noting that a partner in a law firm had a nonpecuniary interest in "reputation and goodwill" and that § 455 does not require an "interest" to be financial); *State v. Logan*, 689 P.2d 778, 784 (Kan. 1984)

7

(acknowledging nonpecuniary interests for associates, but concluding that they, "standing alone, will not create an appearance of partiality"). Such interests might be relevant to the judge in the sense that he may be partial to seeing his own family members succeed, either out of pure family altruism or because the judge may stand to benefit from the relative's success.

Second, a relative acting as a lawyer in the proceeding may also implicate the concern that the judge has acquired personal knowledge of disputed facts through the relative. *See, e.g.*, Abramson, *Judge's Relative is Affiliated with Counsel of Record, supra*, at 1186–87 (referencing the "chance that confidential information might be transferred"); Geyh, Judicial Disqualification, *supra*, at 21 (noting that disqualification has been required "when a reasonable observer might think that judges were aware of events or information that could impair their impartiality—even if they were not so-aware"). An observer might surmise that a relative acting as a lawyer in a case is in possession of particular facts which could be shared with the judge, compromising his impartiality. *See, e.g.*, *In re Hatcher*, 150 F.3d 631, 638 (7th Cir. 1998) (commenting that "outside observers have no way of knowing how much information the judge's son acquired about the broader prosecution while working on the . . . case.").

Third, and least concrete, is the concern that the judge may simply prefer—subconsciously or otherwise—his own relative and may be more receptive to arguments advanced by the relative. Unrelated to any specific interest of the relative

8

that could be advanced by the outcome of the proceeding, there may be a risk of pure favoritism. *See* Charles Gardner Geyh, *The Dimensions of Judicial Impartiality*, 65 Fla. L. Rev. 493, 503 (2013) (noting the "risk of favoritism that relational conflicts of interest create"). Such a risk, though slim, might nonetheless give rise to the appearance of partiality under certain circumstances.

Against this backdrop, I will consider whether § 455 requires recusal in the instant matter.

## III. Discussion

### a. § 455(b)(5)(ii)

I begin by considering disqualification based on familial relationship under § 455(b)(5). A judge must disqualify himself when a person within the third degree of relationship to him—such as his son—"[i]s acting as a lawyer in the proceeding." 28 U.S.C. § 455(b)(5)(ii). The most straightforward conclusion is that this subsection is not implicated in the instant matter. My son is no longer U.S. Attorney and is in no way "acting as a lawyer" in any proceeding before me.

Typically, this disqualification provision requires *actual* participation in the relevant proceeding, which is not alleged here. *See, e.g., Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980), *cert. denied*, 449 U.S. 820 (1980). In the case of a U.S. Attorney, however, "acting as a lawyer" may be more broadly construed to encompass all proceedings litigated in his or her name as U.S. Attorney. *See, e.g., United States v. Arnpriester*, 37 F.3d 466, 467 (9th Cir. 1994) (applying

"vertical imputation" to the U.S. Attorney for the knowledge and acts of his assistants for matters under his official responsibility); U.S. Jud. Conf. Comm. Code. Cond., Advisory Op. No. 38, 2009 WL 8484540 (June 2009) (counseling that recusal of a Judge whose son is serving as U.S. Attorney should extend to "all cases in which the office appears"). Were my son presently the U.S. Attorney, I would be wise to recuse myself when his office appeared before me, irrespective of the degree of his personal knowledge or personal participation in the proceeding.[5]

Goodwin ceased to be U.S. Attorney more than seven months ago, however. Importantly, the statutory language is in the present tense—"is acting as a lawyer"— such that it does not mandate any disqualification now that my son is no longer U.S. Attorney. Seven of the Supreme Court Justices in 1993 recognized as much when interpreting the same statutory language in their *Statement of Recusal Policy*: "It is also apparent, from the use of the present tense, that current participation as a lawyer, and not merely past involvement in earlier stages of the litigation, is required." William H. Rehnquist, Chief Justice, *Statement of Recusal Policy* (Nov. 1, 1993), http://eppc.org/docLib/20110106 _RecusalPolicy23.pdf;[6] *see also* Leslie W. Abramson, *Appearance of Impropriety: Deciding When a Judge's Impartiality "Might Reasonably Be Questioned,"* 14 Geo. J. Legal Ethics 55, 92 (2000) (noting that a judge

---

[5] Indeed, during my son's tenure as U.S. Attorney I did not preside over criminal cases.

[6] This policy was adopted by current Chief Justice John Roberts in September 2005. *See* James M. Anderson et al., *Measuring How Stock Ownership Affects Which Judges and Justices Hear Cases*, 103 Geo. L.J. 1163, 1172 n.47 (2015).

is specifically prohibited "from presiding in a proceeding in which he or she has a current family relationship").

I do not hesitate to draw this bright-line rule based on a plain reading of the statute, in part, because the catch-all provision of § 455(a) will appropriately intercept circumstances prone to bias or its appearance that fall outside § 455(b)(5)(ii)'s present-tense parameters. *See* 13D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3548 (3d ed. Apr. 2016) ("[T]he fact that the judge or the judge's relative has a relationship with someone that does not fall within the terms of § 455(b)(5) does not mean that recusal is never warranted."); Rehnquist, *supra* (noting that a relative's participation in earlier stages of litigation might be relevant in "less specific" provisions of § 455 than § 455(b)(5)(ii)). Past involvement in a case by a *former* U.S. Attorney may implicate the § 455(a) catch-all provision, but recusal is not mandated under the clear language of § 455(b)(5)(ii).

Similarly, other concerns that theoretically provide a rationale for disqualification when a relative lawyer is particularly involved in a case—such as the relative's interest in the outcome of the case or the risk that the relationship facilitates the transfer of information between relatives—are addressed in separate provisions of § 455. For example, § 455(b)(4) and (b)(5)(iii) deal with the possibility that a judge's relative has a financial or other interest that could be "substantially affected by the outcome of the proceeding." And § 455(b)(1) mandates disqualification where the judge has "personal knowledge of disputed evidentiary facts concerning the

proceeding." The existence of these other provisions suggests that § 455(b)(5)(ii) is meant to guard against some more intangible form of bias that could result from the lawyer's present participation in the proceedings before the judge.

Nor was Goodwin *ever* acting as an attorney in this "proceeding," which began with the filing of a criminal complaint five and half months after he left his position as U.S. Attorney. Subsection 455(d)(1) defines "proceeding" to include "pretrial, trial, appellate review, or other stages of litigation." *Black's Law Dictionary* defines litigation as the "process of carrying on a lawsuit;" and "lawsuit" or "suit" is defined as "[a]ny proceeding by a party or parties against another *in a court of law*." *Black's Law Dictionary* (10th ed. 2014) (emphasis added). The initiation of a criminal proceeding "in most instances, begins with the filing of a complaint, an indictment, or some other adversarial document that identifies the parties and the substantive issues to be litigated." *United States. v. Sciarra*, 851 F.2d 621, 635 (3d Cir. 1988); *see also United States v. Knowles*, 638 F. App'x 977, 978–79 (11th Cir. 2016) (interpreting a proceeding under § 455(a) to mean a "case is pending before the district court"); *United States v. Wilson*, 426 F.2d 268, 269 (6th Cir. 1970) ("[A] 'case' begins with the first formal prosecutorial proceeding (arrest, complaint or indictment) which is designed to bring a named alleged offender before the court."). I note that, according to this definition, general investigational activities in the United States Attorney's Office do not trigger the initiation of a criminal proceeding within the meaning of § 455(b)(5)(ii).

12

I **FIND** that recusal is not required under § 455(b)(5)(ii).

### b.  § 455(a)

I now turn to an examination of whether the circumstances create the *appearance* of partiality. Subsection 28 U.S.C. § 455(a) provides that a judge shall recuse himself "in any proceeding in which his impartiality might reasonably be questioned." What matters is not necessarily the "reality of bias or prejudice but its appearance." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)).

This is an objective standard that asks "whether the judge's impartiality might be questioned by a reasonable, well-informed observer who assesses all the facts and circumstances." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) (quoting *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998)). A judge is not required to recuse himself merely on the basis of "unsupported, irrational, or highly tenuous speculation." *DeTemple*, 162 F.3d at 287. Additionally, the reasonable observer "is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased." *Id.*

If criminal proceedings before me were initiated during my son's tenure as U.S. Attorney, I acknowledge there may be an appearance of partiality in the mind of the reasonable observer, and I will recuse myself. By commencement of criminal proceedings, I mean the initiation of an actual case in a court of law, such as the filing

of a criminal complaint.[7]  The commencement of criminal proceedings is an important marker because, for questions of appearance, whether or not the relative's name is publicly associated with a criminal case may be significant.[8]

Conduct of the U.S. Attorney *prior* to the initiation of criminal proceedings, by contrast, may, in rare circumstances, create the appearance of impropriety requiring recusal. In this context, the question of appearance is more nuanced and will appropriately turn on the degree of substantive personal involvement, knowledge, and public association of the judge's relative with the investigation during his tenure.[9]

---

[7] I believe this is a reasonable benchmark that conveniently parallels—though it need not—the language used in § 455, discussed above. Although this marker will not always signify the precise point at which a criminal case began to be litigated in the U.S. Attorney's name, thereby implicating the appearance of partiality (e.g., a criminal complaint does not necessarily originate in the U.S. Attorney's Office or bear the U.S. Attorney's imprimatur), the clarity of such a rule overcomes its shortfalls in precision.

[8] These distinctions are supported by analysis of the much more common disqualification issue in which a judge was formerly a U.S. Attorney, mentioned above. The Committee on Codes of Conduct of the Judicial Conference of the United States ("Committee") draws a distinction between matters that were litigated in the judge's name as the U.S. Attorney and those matters that were pending in the office but never ripened into cases. *See* U.S. Jud. Conf. Comm. Code. Cond., Guide to Judiciary Policy, Vol. 2B, Ch. 3, § 3.3-3 (July 2016). With respect to the latter—matters that never ripened into cases and were therefore never litigated in the judge's name as U.S. Attorney—the Committee draws a further distinction between matters in which the judge was not personally involved (i.e., handled exclusively by subordinates) and those in which he was. *See id.* § 3.3-3 (a-2) (counseling that, for matters that were "pending in the office but never ripened into cases and were thus never litigated in the name of the former United States Attorney (now judge)," the judge should be disqualified without the option of remittal "if the judge was personally involved," but could waive disqualification "if the judge was not personally involved and the matter was handled exclusively by subordinates"). Although recusal is counseled even when a U.S. Attorney was not personally involved in a pre-litigation investigation, it is a lesser form of recusal because waiver is available. As discussed *infra*, because the risk of bias or the appearance of partiality is heightened when the judge himself—rather than his relative—was formerly a U.S. Attorney, it is logical to set a higher threshold for recusal in the familial context.

[9] In considering the more bias-prone scenario of a prosecutor who becomes a judge under the Due Process Clause, the Supreme Court held that "there is an impermissible risk of actual bias when a judge earlier had *significant, personal involvement* as a prosecutor in a critical decision regarding the

This approach comports with a consideration of the potential risks of bias the reasonable observer might fear in considering family relationships, and the extent to which they are implicated when a judge's family member is a former U.S. Attorney. As the Supreme Court has explained, the interests of U.S. Attorneys are unique:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*Berger v. United States*, 295 U.S. 78, 88 (1935); *see also* U.S. Jud. Conf. Comm. Code. Cond., Advisory Op. No. 38, *supra* (quoting *Berger v. United States* and noting that service as an AUSA is distinguishable from service at a private law firm: "[A]n AUSA does not have an 'interest' in the United States Attorney's Office in the same sense that a partner, member or shareholder may have an interest in a private law firm.").[10]

Thus, such interests are questionable in a *sitting* U.S. Attorney and diminish to speculation when considering a *former* U.S. Attorney. A former U.S. Attorney plainly has no financial interest in cases in which he was previously involved, based merely on his former role. There is no financial interest for a related judge to further. Any suggested reputational interest is ephemeral and will rarely cast the appearance

---

defendant's case." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (emphasis added).

[10] Similarly, absent direct involvement in a case, courts have found that prosecutors, as public servants, do not have a financial or reputation interest sufficient to create an appearance of partiality in a relative judge. *See, e.g., State v. Logan*, 689 P.2d 778, 785 (Kan. 1984) (finding it "unlikely that a reasonable person would believe that a judge's propensity to convict criminal defendants would increase because his son works as a prosecutor").

of partiality on the relative judge. A judge has no reasonable interest in seeing that his relatives' past places of employment meet with continued success.

This leaves the speculative concern about a risk that the judge could possess special knowledge about the case. Courts have considered this basis for disqualification in the very distinguishable situation where the judge himself was formerly a prosecutor.[11] An observer might worry that a judge's earlier participation in a case could create preconceptions that would prevent the judge from acting impartially. *See, e.g.*, *Williams*, 136 S. Ct. at 1906 ("[T]he judge's 'own personal knowledge and impressions,' acquired through his or her role in the prosecution, may carry far more weight with the judge than the parties' arguments to the court." (citing *Murchison*, 349 U.S. at 138)). Another concern is that a judge "'would be so psychologically wedded' to his or her previous position as a prosecutor that the judge 'would consciously or unconsciously avoid the appearance of having erred or changed position.'" *Id.* at 1906 (citing *Withrow v. Larkin*, 421 U.S. 35, 57 (1975); *see also* *Adams v. United States*, 302 F.2d 307, 310 (5th Cir. 1962) (crediting the interest "that any lawyer has in pushing his case to a successful conclusion")).

In the prosecutor-turned-judge scenario, there is potential for bias or the appearance of impropriety because the relationship is direct, rather than familial.

---

[11] For federal judges, the two scenarios implicate different statutory subsections with different standards. *Compare* § 455(b)(3) (government employee "participated as counsel, adviser or material witness *concerning* the proceeding") (emphasis added), *with* § 455(b)(5)(ii) (relative "[i]s acting as a lawyer *in* the proceeding") (emphasis added). Section 455(b)(3) governs past government employment of *federal* judges. Prosecutors who becomes *state* court judges raise similar concerns about partiality, which may be analyzed under a due process framework. *See, e.g.*, *Williams*, 136 S. Ct. at 1899.

16

For example, such a judge cannot help but possess facts relating to a case in which he actively participated. But concerns about a judge whose family member was acquainted with the facts of a case are necessarily based on the assumption that family members have inappropriately shared confidential information—a highly unlikely scenario that implicates ethical and legal consequences far graver than recusal. The potential for bias becomes even more improbable when the family member attorney had no direct or personal involvement in a particular matter.

Returning to the specific facts of this case, no reasonable observer, well-informed of the facts and circumstances, would question my ability to preside over this case impartially. There can be no more than baseless and speculative concerns about bias.

My son is no longer the U.S. Attorney in this district, having resigned his office on December 31, 2015. He was not named at any point in the instant proceedings—the criminal complaint was filed against the defendant on June 14, 2016, approximately five and a half months after he left his position as U.S. Attorney. Resp. 5, 7; *see also* Crim. Compl. It is the current U.S. Attorney, Carol Casto, whose name appears on the June 21, 2016 Indictment and the other filings on the docket. Accordingly, my son has not and will not be involved in this proceeding, assigned to me long after his departure. He has not and will not have any supervisory responsibility for the those appearing in the proceeding.

Nor is there any evidence of rare circumstances that might warrant my recusal based on purely pre-criminal proceedings conduct. According to the facts provided by the parties, the U.S. Attorney's Office was contacted sometime after December 3, 2013, at which point AUSA Jennifer Herrald referred the matter to ATF for investigation. Resp. 4; Mot. Recuse 2. The AUSA asserts that between this referral and the June 14, 2016 filing of the criminal complaint, "there was no contact with the federal court system in connection to the matter." *Id.* According to the defendant's characterization, the U.S. Attorney's Office "began investigating Mr. Quinones . . . while Mr. Goodwin was still serving as United States Attorney." Mem. Supp. Mot. Recuse 1–2. But the defendant does not allege that Goodwin was directly or personally involved in this matter at any point. There is no suggestion that Booth Goodwin has any cognizable interest in this matter that outlasted his tenure.

My son was not and is not involved in this proceeding. He was not personally involved in the limited pre-litigation contact this matter had with the U.S. Attorney's Office during his tenure. The defendant's argument relies solely on unsupported speculation that these circumstances somehow suggest that I would decide this case on something other than the merits.

I **FIND** that the reasonable observer could not rationally question my impartiality under § 455(a) or suspect more than a trivial risk of bias under these circumstances. I **FIND** that recusal would be improper in this proceeding as the

18

suggested basis is unsupported, irrational, and highly tenuous. *DeTemple*, 162 F.3d at 287.

## IV.    Conclusion

I **FIND** that neither § 455(a) nor § 455(b)(5)(ii) require my recusal. This criminal proceeding was initiated more than five months after my son resigned as U.S. Attorney in this district, and, to the extent the matter was under investigation during his tenure, he had no personal involvement. Accordingly, the defendant's Motion to Recuse [ECF No. 34] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further DIRECTS the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:      August 16, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE